| | | |
|---|---|---|
| TERRY L. FREEZE, DORIS FREEZE, and ERNEST COLVIN, | ) ) ) ) | |
| *Plaintiffs*, | ) | CASE NO. 4:10-cv-14 |
| v. | ) ) | *Mattice/Carter* |
| THE CITY OF DECHARD, TENNESSEE *et al.*, | ) ) ) | |
| Defendants. | ) | |

## REPORT and RECOMMENDATION

### I. Introduction

The parties in the instant case have filed competing motions for summary judgment which, having been referred by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), are before the undersigned for a report and recommendation. Plaintiffs Terry L. Freeze and Ernest Colvin move for partial summary judgment on their claims alleging defendants denied them procedural due process to which they were entitled under the Fourteenth Amendment when defendants terminated their employment with the Dechard, Tennessee Police Department. [Doc. 24]. Defendants move for summary judgment [Doc. 26] on plaintiffs' constitutional claims as well as their state law claims, all of which arise from their termination from the Dechard Police Department.

Because neither plaintiff possessed a property interest in continued employment with the City of Dechard Police Department, it is RECOMMENDED plaintiffs' motion for partial summary judgment be DENIED, and defendants' motion for summary judgment as to plaintiffs' constitutional claims be GRANTED. It is further RECOMMENDED that the Court decline to

exercise supplemental jurisdiction as to the remaining state law claims and that they be DISMISSED without prejudice.

## II. Relevant Facts

Terry Freeze began working for the City of Dechard, Tennessee (the City) in the police department in 2002 and was promoted to Chief of Police on August 27, 2007. (Freeze Decl. at ¶2, Page ID # 106[1]). Colvin began working as a patrolman for the City on November 27, 2007. (Colvin Decl. at ¶2, Page ID # 104). Both men were fired during a meeting of the Board of Mayor and Aldermen ("BOMA") on March 9, 2009. (Freeze Decl. at ¶3, Page ID # 106); (Colvin Decl. at ¶3, Page ID # 104). The BOMA has the final authority in the City to hire and fire employees. (Henshaw dep. at 32, Page ID # 122). At all times relevant to this lawsuit, defendant Betty Don Henshaw was the Mayor of the City and defendants Scott Moore, Johnny Etheridge, and Jeff Stratton were elected members of the Board of Aldermen for the City. Defendant Ross Peterson was the assistant Chief of Police until being promoted to the Chief of Police on March 9, 2009.

### *The Meeting on February 25, 2009*

Freeze alleges that he received a phone call on February 23, 2009 from Alderman Scott Moore requesting a meeting with Mr. Freeze and Ross Peterson, assistant police chief, at the home of another alderman, Johnny Etheridge, to discuss issues within the police department. (Freeze dep. , at 21-22; Page ID # 159-160). Plaintiff looked up to Alderman Etheridge as a father-figure. (Freeze dep. at 22-23; Page ID # 160-161). He was close personal friends with Alderman Moore, as well. (Freeze dep., at 22:21-24; Page ID # 160).

---

[1] The Page ID # is a reference to the District Court record, every page of which is assigned a consecutive page number.

On February 25, Freeze went to Etheridge's house for the meeting. (Freeze dep. at 24; Page ID # 162). Several items concerning general police department business were discussed. The first topic of the meeting was the proper protocol for paying for dog food for the City's police dog. (Freeze dep. at 25-26, Page ID # 163-164). According to Freeze, at this meeting Aldermen Etheridge and Moore then told him the Mayor was upset and did not like his wife and he may need to resign as chief of police and take a position as sergeant. (Freeze dep. at 28-29; Page ID # 166-67). Plaintiff was told that if he became a sergeant he would keep his level of seniority and a $15.00 hourly rate but not have to contend with the pressure of being the police chief. (Freeze dep. at 28-29; Page ID # 166-68). Freeze testified he "felt outnumbered," and he told them, "if it's going to keep me working out here in the City of Dechard, yes, I will do it." (Freeze dep. at 28-29, Page ID # 166-168.) Freeze further testified that two days after this meeting, Alderman Moore came by his office and whispered to him, "the deal was done, my friend, the deal was done," and Moore also so told him he had talked to the Mayor and it would be "a smooth ride" at the next BOMA meeting. (Freeze dep. at 30-31, Page ID # 168-69). That same day, Freeze went to see the Mayor to ask her if it was "alright" if he took the demotion and she indicated it was. (Freeze dep. at 35, Page ID # 173). According to Moore, however, it was Chief Freeze who asked for the meeting on February 25, 2009, to discuss his demotion because he was tired of the stress of being the police chief. (Moore dep. at 53-55, Page ID # 226).

*The March 9, 2009 BOMA Meeting*

Prior to the BOMA Meeting, the City did not give plaintiffs written notice that their terminations would be considered on March 9, 2009, though they had been given oral notice that their "general job performance may be discussed." (Pl.'s Requests for Admission to the City

3

at ¶¶5,6, Page ID # 144-145). In fact, Mayor Henshaw did not know that plaintiffs' terminations were going to be considered on March 9. (Henshaw dep. at 48, 61, 62, 66; Page ID # 125, 130-31, 134). The actual item on the agenda for the March 9, 2009 meeting was, "discuss police matters." (Etheridge dep. at 32, Page ID # 228.)

The first item discussed at the meeting was a vehicular accident that one member of the Dechard Police Officer Madden had in his patrol car. At the meeting, Madden was suspended for three days, and he became upset. Madden got into a verbal altercation, verging on a fistfight, with another City employee and had to be escorted from the meeting room by two county sheriff's deputies. (Etheridge dep. at 33-36, Page ID # 229). A number of Dechard Police Department employees were present at the meeting including Chief Freeze and Officer Colvin; none of the members of the Dechard Police Department tried to restrain or calm Madden. (Etheridge dep. at 33-36, Page ID # 229).

After Madden was escorted from the meeting room, the discussion turned to Officer Colvin and allegations that he had used his police patrol car to run personal errands which is against police department policy. (Colvin dep. at 78, Page ID # 200). According to Colvin, this subject, which was raised by Moore at the meeting, is related to other events which took place weeks before the March 9, 2009 BOMA meeting. According to Colvin, on February 28, 2009, Alderman Moore phoned Colvin and accused him of using his patrol car to run errands, an accusation Colvin denied. Moore then demanded to know why Colvin's brother-in-law, Chief Freeze, had not resigned. (Colvin dep. at 74-75, Page ID # 196-97.) Colvin further recalled that Alderman Moore told him Chief Freeze was going to be fired because Mayor Henshaw and Alderman Stratton did not like his wife. (Colvin dep. at 75, Page ID # 197). Subsequently but

4

before the March 9, 2009 meeting, Colvin filed a complaint with the Sheriff's department against Moore for harassment. (Colvin dep. at 75, Page ID # 197).

At the March 9, 2009 meeting, in response to Moore's accusations, Colvin told the Board he was being harassed by Alderman Moore. There was some "talking back and forth" between Moore and Colvin, and Colvin became angry and called Moore a liar. (Etheridge dep. at 31-32, Page ID # 228). According to Alderman Moore, because of what had happened at the meeting, he then moved to terminate both Chief Freeze and Officer Colvin. (Moore dep. at 51-52, Page ID # 225). Aldermen Moore, Stratton and Etheridge voted to terminate both of them. (Moore dep. at 51-52, Page ID # 225). Moore testified in his deposition that, prior to the BOMA meeting, he had had no intention of moving to terminate Freeze and Colvin. (Moore dep. at 52, Page ID # 225). After the vote was taken, Freeze asked for the reason for his termination, and Moore told him it was for "the betterment of the City." (Freeze dep. at 66, Page ID # 181). According to Alderman Etheridge, Chief Freeze's and Officer Colvin's failure to restrain or calm Madden played a part in the Aldermen's decision to terminate them. (Etheridge dep. at 33-36, Page ID # 229). Etheridge also believed Colvin's argument with Moore over Colvin's charges of harassment against Moore was also a factor in his termination. (Etheridge dep. at 36, Page ID # 229). The City has also stated that plaintiffs were fired for their unprofessional conduct which occurred during the course of the March 9, 2009 meeting. (Pl.'s Requests for Admission to the City at ¶¶5,6; Page ID # 145).

Freeze admits he could have spoken during the BOMA meeting but chose not to do so, (Freeze dep. at 65-66, Page ID # 180-181); however, both he and Colvin assert defendants did not give them an opportunity to present witnesses or evidence on their behalves and, further, that

5

the City did not present its own proof explaining the reasons for Plaintiffs' terminations. (Colvin Decl. at ¶¶6,7; Page ID # 105); (Freeze Decl. at ¶¶6,7; Page ID # 107). Plaintiffs also assert they were not afforded any type of hearing on their terminations. (Colvin Decl. at ¶8; Page ID # 105); (Freeze Decl. at ¶8; Page ID # 107). By letter dated March 12, 2009, to the Board of Mayor and Aldermen, Chief Freeze requested a hearing before the Board of Mayor and Aldermen. (Freeze Decl. at ¶9; Page ID # 107); (Pl.'s Requests for Admission to the City at ¶7; Page ID # 145). Mayor Henshaw denied his request and responded by letter dated March 23, 2009, stating: "The City does not conduct such a hearing." (Freeze Decl. at ¶9; Page ID # 107); (Pl.'s Requests for Admission to the City at ¶8; Page ID # 145).

On the Separation Notice for Colvin provided by the City to the State of Tennessee, Department of Employment Security, the City stated as the reason for termination: "Action of City Board to Dimiss-No reason given." (Henshaw Dep. Ex. 5, Page ID # 413). The Mayor later filled out and later filed with the State of Tennessee Department of Labor and Workforce Development, Division of Employment Security, more paperwork citing the reason for Colvin's termination as: "Aldermen asked why Decherd police vehicle was sitting in Lowe's parking lot in Tullahoma. Mr. Colvin then tried to file a harassment charge against him with the Franklin County Sheriff." (*Id*. at 36, Page ID # 374).

On the Separation Notice for Chief Freeze provided by the City to the State of Tennessee, Department of Employment Security, the City stated as the reason for termination: "Action of City Board to Dismiss-No reason given." (Mayor Henshaw Dep. Ex. 8, Page ID # 414). The Mayor later filled out and later filed with the State of Tennessee Department of Labor and Workforce Development, Division of Employment Security more paperwork citing the reason

6

for Chief Freeze's termination as a failure to follow applicable state purchasing statutes. (*Id.* at 36, Page ID # 415; Pl.'s Requests for Admission to the City at ¶1, Page ID # 143). Mayor Henshaw admitted in her deposition that at the time that she filled out the form, she had not been told by anyone on the BOMA that Chief Freeze's alleged failure to follow purchasing policies had anything to do with his termination. (Henshaw dep. at 70-71, Page ID # 390-91).

*Dechard's Personnel Policy (The Personnel Policy)*

The City of Dechard adopted a personnel policy by Resolution 8-99 on November 8, 1999 (hereinafter referred to as "the Personnel Policy"). On the first page of the Personnel Policy is the following:

- A. **PURPOSE.** The purpose of this resolution is to establish a system of personnel administrations in the City of Dechard, Tennessee.

- B. **AT-WILL EMPLOYER.** The City of Dechard, Tennessee is an at-will employer. Nothing in this resolution may be constructed as creating a property right or contract right to any job for any employee.

(Personnel Manual, Page ID # 230) (bold is original). The Personnel Policy provides that elected officials, board and commission members, consultants and legal counsel, the city attorney, independent contracts, and volunteer personnel are not covered by the Personnel Policy. *Id.* The Personnel Policy then states that "[a]ll other employees of the municipal government are covered by this personnel policy." *Id.* There appears to be no dispute that the Personnel Policy was in effect at all times relevant to this law suit.

*Dechard's Police Department Policies and Procedures Manual (The Police Manual)*

The Decherd Police Department Policies and Procedures Manual ("the Police Manual") was adopted by Resolution R-01-00 by the BOMA on January 10, 2000. (Henshaw dep. at 16,

20-21, Ex.2, Page ID # 111, 114-115); (Dep. of City Administrator Shawna Brockman dep. at 16, Page ID # 101); (Pl.'s Requests for Admission to the City at ¶9, Page ID # 145). In regard to discipline of police employees, the Police Manual states, on two separate pages: "discipline shall be for cause and shall follow the basic concepts of due process." (Police Manual, Page ID # 138-39.) Furthermore, the Police Manual states: "it is policy to use a progressive system [of discipline]. (Police Manual, Page ID # 139). Termination is listed as the last of five "Steps of Progressive Discipline." (Police Manual, Page ID # 140). The Police Manual further provides that, "[w]henever disciplinary action is used," the employee is to be informed "in writing" of the "exact offense violated" and other steps, including a timeframe to correct the behavior. (Police Manual, Page ID # 141-142).

As previously stated, the BOMA adopted the Police Manual by Resolution R-01-00. "Section 2" Resolution R-01-00 states: "That all resolutions or parts of resolutions in conflict herewith [the Police Manual] are hereby repealed to the extent of that conflict." (Police Manual, Page ID # 137).

The Police Manual was in effect at all times relevant to this lawsuit. (Pl.'s Requests for Admission to the City at ¶14; Page ID # 146).

### III. Analysis

*A. Standard of Review*

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of

8

materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). *See also*, *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir.

9

2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

*B. Discussion*

Both plaintiffs, Chief Freeze and Officer Colvin, have brought claims under 42 U.S.C. § 1983 alleging the City of Dechard, Mayor Betty Don Henson, Alderman Scott Shaw, Alderman Johnny Etheridge, and Alderman Jeff Stratton violated their procedural due process rights guaranteed under the Fourteenth Amendment by firing them without due process of law. Chief Freeze also brings a claim under Section 1983 against defendants for conspiracy to violate his constitutional rights. Finally, both plaintiffs bring state law claims against the defendants alleging violations of the Tennessee Open Meetings Act, Tenn. Code Ann. 8-44-101 *et seq.*; violations of the Tennessee Public Protection Act, Tenn. Code Ann. 50-1-304, and claims of civil conspiracy and wrongful discharge.

*1. Due Process Claims Under the Fourteenth Amendment*

As previously indicated, plaintiffs bring their procedural due process claims under Section 1983. Section 1983 is a remedial statute which does not itself create independent substantive legal rights. Section 1983 simply provides a vehicle by which a person may recover damages for a violation of his rights secured to him by federal law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). To make out a claim under Section 1983, a plaintiff is required to show (1) that he has been deprived of a right, privilege, or immunity secured to him by the

10

United States Constitution or other federal law and (2) that the defendants caused the deprivation while they were acting under color of state law. *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley,* 167 F.3d 1014, 1017 (6th Cir. 1999); *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir. 1997).

There is no question that defendants, the Mayor, the Aldermen, and the City, were acting under color of law when they terminated plaintiffs. The undersigned now turns to the question of whether plaintiffs' procedural due process rights, secured to them by the Fourteenth Amendment, were violated.

The Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. In considering procedural due process claims, the Court employs a two-step process. *See Blazy v. Jefferson Cnty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411-12 (6th Cir. 2011) (citing *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004)). First, the Court will determine whether the property interest claimed by the plaintiff is within the ambit of the Fourteenth Amendment's protection. *See id.*; *Arnett v. Myers*, 281 F.3d 552, 564-65 (6th Cir. 2002). Second, after concluding that the interest claimed is within the contemplation of the Fourteenth Amendment, the Court will then consider whether a plaintiff was afforded the process that was due. *Blazy*, 438 F. App'x at 411-12; *Arnett*, 281 F.3d at 565. ("[I]n a section 1983 due process claim for deprivation of a property interest, a plaintiff first must show a protected property interest, and only after satisfying this first requirement can a plaintiff prevail by showing that such interest was abridged without appropriate process.") (quotation omitted).

11

Consequently, plaintiffs must first establish that they had a property interest in continued employment with the City. *See Arnett*, 281 F.3d at 564-65. The United States Court of Appeals for the Sixth Circuit has held:

> Whether a property interest exists is not determined by reference to the Constitution; rather, property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Brown v. City of Niota, Tenn.*, 214 F.3d 718, 721 (6th Cir. 2000) (quoting *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 409 (6th Cir. 1997). In other words, a property interest in continued employment can be created, *inter alia,* by state law and by contract, express or implied, between the employer and employee. *See Golden v. City of Columbus*, 404 F.3d 950, 955 (6th Cir. 2005); *Blazy v. Jefferson Regional Planning Com'n,* 2010 WL 1009791 *4 (S.D. Ohio Mar. 12, 2010).

It is well-established that "Tennessee has long adhered to the employment-at-will doctrine in employment relationships not established or formalized by a contract for a definite term;" an at-will employment relationship permits both the employee and the employer to terminate such a relationship with or without cause. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see Beech v. Fuller*, 172 F. App'x 111, 113 (6th Cir. 2006); *Brown*, 214 F.3d at 721. Consequently, absent some specific law or contract giving Freeze and Colvin a property interest in continued employment with the City, the presumption in Tennessee is that they are at-will public employees who can be fired for cause or no cause.

In the instant case, Officer Colvin asserts a state statute, Tenn. Code Ann. § 38-8-301 *et seq.*, provides him a property interest in continued employment with the City. Further, both Colvin and Freeze argue that the Police Manual the BOMA adopted by Resolution R-01-00 in

12

January of 2000 constitutes an implied contract of employment thereby giving them the necessary property interest.

### *a. Tenn. Code Ann. 38-8-301 et seq.*

Part 3 of Chapter 8, Title 38, addresses "Investigations of Police Officers." Part 3 sets forth a number of procedures for the investigation of police conduct. For example, Tenn. Code Ann. § 38-8-304, entitled "**Disciplinary actions and proceedings; due process,**" provides:

> Before any dismissal, demotion, suspension without pay or transfer for punitive reasons may be imposed, the following must be complied with:
>
> (1) The police officer shall be notified in writing of all charges, the basis for the charges, and the action that may be taken;
>
> (2) The police officer shall be given an opportunity, within a reasonable time limit after the date of the written notice provided for in subdivision (1), to respond orally and in writing to the charges. The time limit shall be determined by the agency, but in no event shall it be less than five (5) calendar days unless agreed to by the police officer; and
>
> (3) In making a response, the police officer may be assisted by counsel at the officer's own expense.

(Emphasis original). Further, Tenn. Code Ann. § 38-8-305 provides that an officer subject to disciplinary action up to and including dismissal is entitled to a hearing upon request and shall be given the opportunity to present evidence and witnesses and has the right to be represented by an attorney. Tenn. Code Ann. § 38-8-305. Colvin argues that these provisions provide him a property interest in continued employment with the City, *i.e.* that he could not be fired without just cause thereby entitling him to minimum due process under the Fourteenth Amendment. However, one provision of this statute indicates that the statute itself was not intended to create a property interest. Tenn. Code Ann. § 38-8-309 states:

13

> **Applicability**
>
> This part shall apply only to those agencies **that now provide a property interest in employment for their police officers** and that have no other established procedures for dealing with the dismissal, demotion, suspension or transfer for punitive reasons of police officers.

(Emphasis added). Consequently, unless the police officer in question already has a property interest in employment with his agency, the procedures and protections in Tenn. Code Ann. § 38-8-301 *et seq.* do not apply. Furthermore, at least two courts have taken the position, pursuant to Section 38-8-309, that if a city has its own disciplinary procedures, then the procedures found in Tenn. Code Ann. § 38-8-304 do not apply:

> Even if plaintiff had evidence that he was terminated for punitive reasons, the statute [Tenn. Code Ann. § 38-8-304] would still not apply because the Town of Oliver Springs provides procedures for termination of employees. T.C.A. § 38-8-309 provides: "This part shall apply only to those agencies that now provide a property interest in employment for their police officers and that have no other established procedure for dealing with the dismissal, demotion, suspension, or transfer for punitive reasons of police officers." The United States Court of Appeals for the Sixth Circuit has noted that T.C.A. § 38-8-304 "only provides a default rule that can be overridden by local regulation." *Lisle v. Metropolitan Gov't. of Nashville,* 73 Fed. Appx. 782, 2003 WL 21580642 (6th Cir.2003).

*McFarland v. Town of Oliver Springs*, 2007 WL 2022204 (E.D. Tenn. July 11, 2007). The *McFarland* Court concluded Tenn. Code Ann. § 38-8-304 did not apply to the town and did not create a property interest in continued employment while also concluding that the disciplinary procedures established by city ordinance did not establish a property interest in continued employment. *Id.* at *4. Accordingly, for all the reasons stated above, the undersigned

concludes Tenn. Code Ann. § 38-8-301 *et seq.* does not establish a property interest in continued employment for plaintiff Colvin.[2]

### b. Implied Contract of Employment

Colvin also asserts, as does Freeze, that the Police Manual in effect at the time they were fired constituted an implied contract of employment which established for them a property interest in continued employment with the City of Dechard which could not be terminated absent just cause and due process. "Under Tennessee law, what would otherwise be an at-will contract may be modified by specific language which evidences an intent to modify the existent employment contract," and that "rules and regulations, like employee handbooks, [can] modify an employment relationship, [and] Tennessee courts have 'recognized that an employee handbook can become a part of an employment contract.'" *Brown*, 214 F.3d at 721 (citing *Rose v. Tipton Cnty. Pub. Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997)). Thus, resolutions and employee handbooks such as those at issue here may "convert an at-will employment agreement into a protectable property interest," but only if they contain specific and "unequivocal language demonstrating the employer's intent to be bound by the handbook's provisions." *Id.* (citing *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 688 (Tenn. Ct. App. 1999)) (alteration omitted); *see Rogers v. Clevinger*, 93 F. App'x 751, 752 (6th Cir. 2004) (holding that, under Tennessee law, "at-will employment can be modified by language evidencing an intent on the part of the employer to modify the employment relationship. Such

---

[2] Plaintiff Freeze concedes that Tenn. Code Ann. § 38-8-301 *et seq.* does not apply to him pursuant to Tenn. Code Ann. § 38-8-301 (2) which states, "'Police officer' means police officer as defined by law; however, this part shall exclude chiefs of police and sheriffs and any probationary member of any agency affected by this part."

15

modifying language must show specific intent by the employer to be bound by its terms")
(citation omitted). This is a "high standard." *Brown*, 214 F.3d at 721.

Freeze and Colvin assert the Police Manual is an implied employment contract requiring good cause to terminate their employment and thereby giving them a property interest which could not be terminated without due process. The District Court addressed this same issue in *Madden v. City of Dechard*, No. 4:10-cv-13, slip op. at *15 (March 27, 2012) (Mattice, J.), in which the Court examined the identical Police Manual and the identical Personnel Policy at issue in this case. In *Madden,* the plaintiff also argued the Police Manual was an implied employment contract which created a property interest in his continued employment as a police officer with the City of Dechard.[3] In that decision, the district court found that the Police Manual "merely outline[s] a grievance and disciplinary procedure which – should they choose to follow it – police officials must apply." *Id.* at 15. The District Court further explained,

> Resolution 8-99 [the Personnel Policy] is entirely unequivocal about its classification of employees and their property rights vis-a-vis continued city employment. It clearly states that "[e]mployees may be dismissed for cause, for no cause, or for any cause . . ." and that "Decherd, Tennessee is an at-will employer." (Doc. 9-4 at 1, 7). To the extent that the language Plaintiff has identified may appear to conflict with that classification, it is without effect: "Nothing in [the Personnel Policy] may be constructed as creating a property right or contract right to any job for any employee." (*Id.* at 1, 7). Quite simply, Resolution 8-99 [the Personnel Policy] does nothing to further Plaintiff's contention that he possessed a property interest in continued employment with the City of Decherd; indeed, it substantially undermines that position.

*Id.* at 16. As do the plaintiffs in the instant case, the *Madden* plaintiff asserted that the Police Manual conflicts with the Personnel Policy as to whether he could be terminated without just cause and without due process. As do the plaintiffs in the instant case, the *Madden* plaintiff

---

[3] Plaintiff Madden was the third police officer terminated by the City of Dechard on March 9, 2009 during the BOMA meeting.

argued that the "at-will" provisions in the Personnel Policy were repealed when the City, two months after adopting the Personnel Policy, adopted the Police Manual which states in relevant part, "… all resolutions or parts of resolutions in conflict herewith are hereby repealed to the extent of that conflict." The District Court in *Madden* rejected this argument stating,

> [The Police Manual]does not conflict with either the presumption that the City of Decherd is an at-will employer or [the Personnel Policy's] explicit statement to that effect. The portion of the [Police Manual] on which Plaintiff relies outlines the Decherd Police Department's "grievance and disciplinary procedures." (Doc. 17-2 at 2). In its introduction, it provides a general policy statement that: "It is the policy of this agency [i.e., the Decherd Police Department] to avoid terminating an otherwise productive member when conduct, behavior or performance problems occur, *if possible*." *Id.* (emphasis added). When, in the following section, it defines the processes by which the police department will employ discipline, the Resolution states: "*When discipline is deemed appropriate*, this agency will use a progressive system *when practicable*. Furthermore, discipline shall be for cause and shall follow the basic concepts of due process." (*Id.*)

*Madden*, No. 4:10-cv-13, slip op. at *16-17 (emphasis original). The *Madden* Court also noted that the Police Manual makes no reference to the aldermen who are the final decision makers on policies and procedures and concluded that this omission indicated the aldermen are not bound by the Police Manual. *Id.* at 17. The *Madden* Court concluded the Police Manual does not limit the aldermen's power to remove any city employee "for cause, for no cause, or for any cause as long as it does not violate federal and/or state law or the municipal charter." *Id.* at 17 (quoting the Personnel Policy at 7, Page ID # 236). Rather, the *Madden* Court found the Police Manual "appears to be a policy statement that informs the personnel actions of a municipal agency that may be overridden or supplanted at any time by the municipality's governing body." *Madden*, No. 4:10-cv-13, slip op. at *17-18.

In accordance with the District Court's decision in *Madden v. City of Dechard*, No. 4:10-cv-13 (E.D. Tenn. Mar. 27, 2012) (Mattice, J.), the undersigned concludes that the Police Manual

17

does not create a property interest for Freeze or Colvin in continued employment with the City of Dechard Police Department.

### c. Conclusion of Plaintiffs' Due Process Claims

Absent a property interest in continued employment, the plaintiffs cannot maintain a claim for deprivation of that property interest without due process of law. *See, e.g., Bd. of Regents v. Roth,* 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Logic also dictates that if Chief Freeze has no property interest in continued employment with the City, he cannot maintain a claim against the defendants for conspiracy to deprive him of that property interest. Consequently, as to all of plaintiffs' procedural due process claims, the undersigned will RECOMMEND defendants' Motion for Summary Judgment be GRANTED and plaintiff's Motion for Partial Summary Judgment be DENIED.

### 2. The State Law Claims

As previously indicated, in addition to their claims under Section 1983, plaintiffs also bring state law claims against the defendants alleging violations of the Tennessee Open Meetings Act, Tenn. Code Ann. 8-44-101 *et seq.;* violations of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, and claims of civil conspiracy and wrongful discharge. When a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c)(3). Generally, "if the federal claims are dismissed before trial, the state claims should be dismissed as well." *Harper v. Auto Alliance Int'l*, 392 F.3d 195, 210 (6th Cir. 2004) (citation and quotation omitted).

Because the undersigned recommends that all federal claims be dismissed and because the parties are non-diverse, the undersigned also recommends that the state law claims be dismissed without prejudice.

IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[4] that (1) the plaintiffs' Motion for Partial Summary Judgment [Doc. 24] be DENIED, (2) the defendants' Motion for Summary Judgment [Doc. 26] be GRANTED, (3) the plaintiffs' claims brought under 42 U.S.C. § 1983 relating to a deprivation of a property interest without due process of law be DISMISSED with prejudice and (4) plaintiffs' state law claims for violations of the Tennessee Open Meetings Act, Tenn. Code Ann. § 8-44-101 *et seq.* and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, and for civil conspiracy and wrongful discharge be DISMISSED without prejudice.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).